Arbitration should not be a trap for the unwary. Unfortunately, in this case, in his desire to find an equitable solution to a perceived problem, the arbitrator committed twofold error and set such a trap. It has to manifest disregard of the law. That is a knowing disregard of the law. The test is manifest disregard for the law. Why don't you show me where that happened? It happened in two areas, Your Honor. The first, and perhaps the most palpable, is the area with respect to the application of principles of party and interest and alter ego. Well, that's kind of a red herring, isn't it? I hope not, Your Honor. Well, the real question in this case is, did Critical Capital consent to arbitration? Or, put it another way, did the arbitrator act within his jurisdiction? If he acted within his jurisdiction, if he made mistakes about real party and interest, or alter ego, it's totally irrelevant because it's not contrary to, it doesn't meet the standard. And our cases make it clear that you can be dead wrong and still have a good arbitration award. But was there jurisdiction? That's the question. Did he act within the scope of his jurisdiction? Let me take that question first and then return to the manifest error. The fact is, this was not a case where Critical Capital was a signatory to the agreement. It's a case where Critical Capital signed on voluntarily, came into the case at the last minute, shortly before the arbitration. Stuck its head in the news, I think we call it. I'm sorry? Stuck its head in the news. Well, it didn't come in of its own accord. It was brought in as a counterclaim. Without objection. Without objection, but with a fixed scope of charge against it. Well, that's what you say now, but that isn't necessarily so. They accepted arbitration, so they got in the game. And the arbitrator made a lot of findings that are not disputed, which go well beyond their participation cross-claim. There's a whole litany that it was a moving party in the litigation. It was the one that would obviously benefit from it. It engineered the lien foreclosure. It was the only one against which the shareholders could recover. And only it would benefit from the judgment. So all of those are factors from which you could infer that they consented to the arbitration. It was their product. Frankly, the first several that you've mentioned, you're absolutely correct. Those derive from the claim of equitable subordination. The relationship between critical capital and focus was very much what was being in dispute here. What was never placed in dispute until the arbitrator's decision, preliminary decision, was the relationship between critical capital and pursuit. The question of whether critical capital was the only entity that would profit by a finding was not made a subject of this arbitration. Critical capital never having to deal with that question put on no case about it. And that's what's deeply troubling about this case. How does that relate to the question of jurisdiction? It relates in a twofold fashion. First, because critical capital came into the case voluntarily. So it's our position that critical capital came into the arbitration voluntarily. Yes. Well, that's the end of it. It is not. In fact, it's the beginning of it. It came in voluntarily because it was facing a particular group of charges. If those charges were subsequently changed, which is essentially what was done here by the arbitrator at the 11th hour, adding concerns, adding questions, adding issues, creating a whole question of alter ego that was not raised. But what you're saying is they came into the arbitration voluntarily, but they didn't realize how far it would go. That's correct. Well, that's not much of an argument to defeat jurisdiction. It is if one comes in not as a signatory, but in response to a counter, essentially a counterclaim. Critical capital could have stayed outside of this case. And it's our view that someone who comes in voluntarily. Isn't this sort of analogous to a jurisdiction of a court? I mean, let's say there's a doubt about personal jurisdiction, you know, sales of process or whatnot. You know, defendants maybe have some some argument about it. But she was not assertive, gets into the case and then and then gets in deeper, you know, as part of the claim or whatnot. At that point, can you go back and say, wait a minute, I didn't assert the service of process claim because I didn't think I'd get in this deep. Once once you are once you are on the moving platform, you pretty much have to have to deal with what's there. It seems to me it depends on how far the playing field has shifted in the interim. Why? I mean, let's use the district court analogy, you know, superior court analogy. Let's say you're a defendant. You have a very good claim that service of process wasn't properly affected. But for whatever reason, you choose not to assert the thing. Well, I'd rather go and fight on the merits. And then third party joins the fray and says, OK, now that we've got this defendant here going, we're going to come in a separate separate claim and the same action on a third party claim or an interpreter claim or whatever. And the litigation gets farther and farther, becomes bigger and bigger. Can you at that point say, oh, wait a minute, I only fail to us. You know, I thought I was only getting up to my knees and now I'm getting in. No, I mean, once once you're in, you're in. I suppose I can't. Is there any circumstance under which you could say, wait a minute, not now. I'll assert the claim I waived earlier. Participant arbitration is a contract. Participation as a general matter is broadly construed under the terms of the agreement between the parties. This was not a case, however, where the party that was participating had executed the contract. And it's our position that different rules apply with respect to what participation means under those circumstances. Where do these different rules come from? They come from the note from fundamental concepts of due process, which generally would require that in advance of participation, you know the scope. This is private. It's just a contract. Yes, Your Honor. The contract doesn't you don't have a due process right to a fair contract. But you do have a due process right to the court's enforcement of the contract. And it's right. This is it. You're relying on due process. This is your authority. We are certainly relying on. We have something better. We have a case. I do not have a case, Your Honor. I don't have a case that goes particularly to the due process concern with respect to jurisdiction. But the due process concern also carries over into the issue of alter ego. I mean, it was an immediate objection as soon as you saw that the thing had gone out of control was an immediate objection. As soon as we saw we first became aware that they had gone out of control when the arbitrators preliminary opinion came down. Yes, there was an immediate objection. Well, the preliminary opinion was one that assist attorney's fees. I said it would assist attorneys. That's correct. That's the first time you objected. That's correct. And that's what dissipated in it until that time. We participated to the extent of appearing. We put on no witnesses. We basically viewed the counterclaim as frivolous. And in fact, that's what the arbitrator held. There was no need to put on any defense because there was no claim of alter ego in the case. Yes, absolutely. I frankly wish that my client had not gotten into it. But a mistake was made. I don't think you've persuaded anybody here on your main point. Shall I turn then, Your Honor, to the. The interesting point that you make is that somehow or other, a person who is not a signatory but participates in arbitration is treated differently from a person who signed the agreement. Is there any authority for that? The only authority stems from the fact that the agreement to participate, in contrast to a written agreement, the agreement to participate has to be inferred from the conduct of the parties. Right. So if I join the arbitration under a contract I didn't sign and I take part in it, I finance it, I organize it, I structure it, I push it. I'm I consent to the arbitration. I'm subject to the agreement even if I didn't sign it. Isn't that right? If a obviously written objection to one element of jurisdiction was was issued early on, perhaps not. In this case, there was a general objection and there was no claim by critical capital for attorneys fees. There was no acquiescence at any point that attorneys fees were appropriately issued for or against it. Well, I'm going I'm taking back a couple of steps to the beginning of the arbitration when it was started by focus and focus was operated by and financed by and run by and controlled by critical capital. That's pretty much what the findings of the arbitrators were. And the arbitrator and the critical capital initiated the arbitration through focus. It was the interested party. So it could certainly be concluded inferentially that it consented to the arbitration since it organized it and engineered it. Actually, the focus commenced the arbitration initially on its own. And my understanding is subsequently through the its failure to make payments to critical capital, critical capital caused that cause of action to be sold. It acquired itself because it to be sold to pursuit. Certainly that foreclosure process was at the behest of critical capital. But the notion that critical capital somehow controlled the litigation is entirely unsupported. The fact is counsel for the parties was the same, but there was no showing, no testimony, no evidence of any sort and no claim that critical capital was somehow pulling the strings from the background with respect to the litigation per se. Well, those were the findings in effect. Those were the findings. They may be wrong, but they're bindings. To the extent that they are findings other than findings related to a claim that was not raised, they are bindings. However, our position is claims relating to the alter ego issue are in fact not bindings. And the reason for that is, and this goes back to your earlier point, manifest disregard for the law. You know, you sort of convict yourself by saying this is an arbitrator who was an expert on this kind of law. He knew what he was doing. He made pretty clear what the circumstances was for them to impose liability. And the more you say, oh, he's a real expert, he must have gone off his head, the less convincing you are. So you've got a very uphill fight. I accept that. If he really knew what he was doing, would the district court have been compelled to find that he meant alter ego when he didn't say it? If he really knew what he was doing, and I believe he did, why didn't he conduct an alter ego analysis? The reason he didn't was because he recognized that there wasn't sufficient evidence for such an analysis in the record and that introducing such a concept at the last minute would be so palpably unjust that it was easier in his exercise of equity jurisdiction to choose a different course. And the course he chose was a substitute, a different notion of a party and interest. Now, remember, earlier in the case, he had determined that pursuit was the true party and interest, which was another ground given that there was no claim that pursuit and critical capital were alter egos or shared control parties of any sort that put critical capital in the position of believing that it was not implicated in that issue. It was only at the issuance of this proposed finding of fact and finding of law that, for the first time, this notion of real party and interest was issued. In our research, we've only found real party and interest used in cases where there's a question of a fraud upon the court or a question of simple standing. There is no substitution of that concept for the far more rigorous and, indeed, equitable-based findings that are required for an alter ego. The fact is those findings could not be made based on this record, and that's why, knowingly, manifestly, we believe Judge Frohlich, who we think was an expert, issued that approach. So, again, there is a twofold problem here. Quite clearly, the judge had an interest in remedying what he perceived to be a lack of resources for the payment of attorney's fees. I would challenge that perception if we were in a different forum. I certainly agree that we cannot, but, frankly, there was no evidence, and the Court said, or rather, the arbitrator said there was a lack of fact-finding with respect to pursuits finances. Why? Because it was not put at issue, because facts weren't developed in the record by the appellees in this case on that issue. In our view, the arbitrator should have, had he had these questions and concerns at the 11th hour, at the very least, reopened the record and allowed critical capital to come back in and make its defense. Instead, he injected at the last minute these novel issues and made findings of fact without, according, we believe, sufficient attention to black-letter law, which he knew. The fact is, under California State law, when a judgment creditor is added to a case at the 11th hour or after the close of the record, there needs to be a finding not only of control, but also of alter ego. The Court has split on that, right? Carr goes the other way, and this Court has followed Carr and Levander. You probably think it's wrongly decided. To the extent that there is a finding of fraud, it is obviously right. There's not even an allegation of fraud in this case. Because you don't need fraud. Well, I think Levander and Carr both had elements of fraud upon the Court within their findings. Your Honor, I suppose I will save the remainder of my time for rebuttal unless there are further questions on this issue that I can address. Thank you. Good morning, Your Honor. My name is Joel Segal, and I represent the appellees. How are you, Mr. Segal? Very well, thank you. Anything in your brief that you think, anything that you've heard today that wasn't adequately covered in your brief? No, Your Honor. Okay. Thank you. In terms of the appeal, I'd like to do, if not answer. I guess your answer is, yes, there are things. On that appeal. Inadequately covered in your brief. Go ahead. We have our appeal, and I'd like to take time to argue that, if I may. You mean the appeal on the motion for attorney's fees? Correct. They were consolidated for hearing. It's just a matter of how we read the contract, right? That's correct, Your Honor. And the law that would apply. It doesn't say anything about proceedings outside of arbitration. Well, the specific language reads that the prevailing party in any arbitration is entitled to the attorney's fees and costs. Arbitration is a process that includes confirmation or, in this case. Is it? Is it? Do you have to assume that when the party says arbitration in a contract, we also mean confirmation or whatever review proceeding occurs in court? Absent a finding that that language is broad enough to encompass that, it would render the party's meaning vitiated, and I believe that's based on the fact that an arbitration award, absent confirmation, is simply a piece of paper. You cannot enforce it. It doesn't give the parties a means to enforce their agreement to arbitrate. People sometimes just pay. They realize there's no point in going to court, no point in wasting time and money on it, and they just pay it. Exactly. And that would be the hope of anyone who submits to arbitration, Your Honor, but that was not the case here and is often not the case. No, it's just another. In this case, your client didn't think ahead and specify what he needed to specify. Well, it's $65,000 up to the point you took it up here. It's just, you know, it doesn't deter people from arbitration. It's going to be a little bit out of what you're getting, but not an awful lot. And the contract just isn't written the way you want it written. So there's no point in telling us we should be inventive. It's just that's the way it is. You ought to face it. It's a valuable lesson for the future. The presumption, of course, is that parties pay their own attorneys' fees. So you have an uphill battle in selling that interpretation of the agreement. Correct, Your Honor. And, of course, when you sign the contract, of course, you're always at risk that you'll be at the receiving end of these things. That's always a possibility. So sometimes clients don't want to be quite so expansive in what they say. I mean, after you win, you want to read it broadly, but maybe when you're signing it, you don't know where it's going to cut. You're not quite so anxious to make it so broad. There is no crystal ball. However, under the AGEDA decision, it was expressly held that a clause that does not specifically mention appeals or motions to confirm or vacate, whether under 9 U.S.C. 9 or 10, that it would encompass that. But having previously ruled in under prior cases that a attorney's fees clause that said you're entitled to bring suit, and if you prevail in suit, you get attorney's fees, they found the converse applicable to the arbitration context. I think you said it all in your brief. I don't know that you're saying anything new. Thank you, Your Honor. May I reserve the rest if there's any argument from the other side on that issue? Thank you. We, too, are going to listen to it in the future. Thank you, Your Honor. Okay. The case just now was testified. We'll next hear argument in the United States v. Morales.
judges: Noonan, Kozinski, Schwarzer